Jahan C. Sagafi (SBN 224887)
**OUTTEN & GOLDEN LLP**
One California Street, 12th Floor
San Francisco, CA 94111
Tel.:    (415) 638-8800
Fax:    (415) 638-8810
Email:    jsagafi@outtengolden.com

Sabine Jean*
Jarron McAllister*
**OUTTEN & GOLDEN LLP**
685 Third Avenue, 25th Floor
New York, NY 10017
Tel.:    (212) 245-1000
Fax:    (646) 509-2060
Email:    sjean@outtengolden.com
Email:    jmcallister@outtengolden.com

*Attorneys for Plaintiffs and Proposed Class, Collective, and PAGA Action Members*

*Admitted pro hac vice*
**Pro hac vice motions forthcoming*

Gregg I. Shavitz**
Camar R. Jones*
**SHAVITZ LAW GROUP, P.A.**
951 Yamato Rd., Suite 285
Boca Raton, FL 33431
Tel.:    (800) 616-4000
Fax:    (561) 447-8831
Email:    gshavitz@shavitzlaw.com
Email:    cjones@shavitzlaw.com

# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF CALIFORNIA

ALBERT PARIS SUAZO, ALEXA SUART, and LEEDA HABIBI, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

BLUEMERCURY, INC. a Delaware corporation,

Defendant.

Case No. 4:22-cv-06307-DMR

**REVISED NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS, COLLECTIVE, AND PAGA ACTION SETTLEMENT**

Hearing Date: May 2, 2024
Time:            10:00 a.m.
Courtroom:   Courtroom 11 – 19th Floor
Judge:          Hon. James Donato

# TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................................................... 1

   A.    Factual Background .................................................................................... 2

   B.    Procedural Background................................................................................ 3

   C.    Negotiation and Settlement........................................................................ 4

II.   THE PROPOSED SETTLEMENT ......................................................................... 4

   A.    Settlement Class......................................................................................... 4

   B.    Settlement Fund......................................................................................... 4

   C.    Notice Procedure....................................................................................... 6

   D.    Class Representative Service Awards to Be Requested in Fee Motion............. 6

   E.    Attorneys' Fees and Costs to Be Requested in Fee Motion ............................ 7

   F.    Handling of Unclaimed Funds ................................................................... 8

   G.    Appointment of Class Representative and Class Counsel ................................ 8

III.  ARGUMENT .......................................................................................................... 9

   A.    Certification of the Rule 23 Class Is Proper .............................................. 9

      1.    Rule 23(a) Is Satisfied................................................................... 9

      2.    Certification Is Proper Under Rule 23(b)(3)........................................ 11

      3.    Plaintiffs' Counsel Should Be Appointed as Class Counsel................ 12

   B.    Collective Certification of the Putative Collective is Appropriate .................. 12

   C.    The Settlement Is Fair, Reasonable, And Adequate ........................................ 13

      1.    Plaintiffs Face Significant Hurdles on Class Certification .................. 13

      2.    The Settlement Amount Is Appropriate................................................. 14

         a)    The PAGA Allocation Is Reasonable ....................................... 16

      3.    The Extent of Discovery Supports Settlement....................................... 16

      4.    Counsel's Experience and Views Support Approval............................ 17

      5.    The Parties Participated in Arm's-Length Negotiations

           Before Mediator Michael J. Loeb ....................................................... 17

REVISED MOTION FOR PRELIMINARY
APPROVAL OF SETTLEMENT

D.    The Court Should Approve the Proposed Settlement Administrator................ 17

E.    The Court Should Approve the Proposed Notice and Notice

Administration Plan ......................................................................................... 18

IV.    A FINAL APPROVAL HEARING SHOULD BE SCHEDULED............................. 20

V.    CONCLUSION....................................................................................................... 20

REVISED MOTION FOR PRELIMINARY
APPROVAL OF SETTLEMENT

# TABLE OF AUTHORITIES

**CASES**                                                                     **PAGE(S)**

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)...............................................................................10,11,12

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
    568 U.S. 455 (2013)............................................................................................11

*Armstrong v. Concentrix Corp.*,
    No. 16 Civ. 05363  (N.D. Cal.)........................................................................15

*Berndt v. California Dep't of Corr.*,
    No. 03 Civ. 3174-PJH, 2012 U.S. Dist. LEXIS 37755 (N.D. Cal. Mar. 20, 2012) ...............14

*Betancourt v. Advantage Human Resourcing, Inc.*,
    No. 14 Civ. 01788, 2016 U.S. Dist. LEXIS 10361 (N.D. Cal. Jan. 28, 2016) .......................13

*Brawner v. Bank of Am. N.A.*,
    No. 14 Civ. 02702-LB, 2016 U.S. Dist. LEXIS 4975 (N.D. Cal. Jan. 14, 2016).....................7

*Campbell v. City of Los Angeles*,
    903 F.3d 1090 (9th Cir. 2018) ...........................................................................12

*Cancilla v. Ecolab, Inc.*,
    No. 12 Civ. 3001, 2015 U.S. Dist. LEXIS 106249 (N.D. Cal. Aug. 12, 2015).......................13

*Churchill Vill., LLC v. GE*,
    361 F.3d 566 (9th Cir. 2004) .............................................................................18

*Cotter v. Lyft, Inc.*,
    176 F. Supp. 3d 930 (N.D. Cal. 2016) ...............................................................14

*Cotter v. Lyft, Inc.*,
    193 F. Supp. 3d 1030 (N.D. Cal. 2016) .............................................................16

*DiMercurio v. Equilon Enters. LLC*,
    No. 19 Civ. 04029-JSC, 2022 U.S. Dist. LEXIS 225426 (N.D. Cal. Dec. 14, 2022).............16

*Dunleavy v. Nadler* (*In re Mego Fin. Corp. Sec. Litig.*),
    213 F.3d 454 (9th Cir. 2000) .............................................................................16

*Dyer v. Wells Fargo Bank, N.A.*,
    303 F.R.D. 326 (N.D. Cal. 2014)..........................................................................6

*Galeener v. Source Refrigeration & HVAC, Inc.*,
    No. 13 Civ. 04960, 2015 U.S. Dist. LEXIS 193092 (N.D. Cal. Aug. 20, 2015).....................7

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ...................................................................................9,10,13

*Hernandez v. Dutton Ranch Corp.*,
   No. 19 Civ. 817, 2020 U.S. Dist. LEXIS 47106 (N.D. Cal. Mar. 17, 2010) ...........................12

*Johnson v. Triple Leaf Tea Inc.*,
   No. 14 Civ. 1570, 2015 U.S. Dist. LEXIS 170800 (N.D. Cal. Nov. 16, 2015)...................8,10

*Lillehagen et al. v. Alorica, Inc.*,
   No. 8:13 Civ. 92 (N.D. Cal.)...................................................................................15

*Linney v. Cellular Alaska P'ship*,
   151 F.3d 1234 (9th Cir. 1998) ...................................................................................16

*Loera v. Cnty. of Alameda*,
   No. 23 Civ. 00792, 2023 U.S. Dist. LEXIS 120800 (N.D. Cal. July 13, 2023) .....................12

*Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ...............................................................................9,17

*Overton v. Hat World, Inc.*,
   No. 11 Civ. 01645, 2012 U.S. Dist. LEXIS 144116 (E.D. Cal. Oct. 4, 2012) .......................19

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ...................................................................................13,17

*Roes, 1-2 v. SFBSC Mgmt., LLC*,
   944 F.3d 1035 (9th Cir. 2019) ...................................................................................1

*Romero v. Perryman (In re Easysaver Rewards Litig.)*,
   906 F.3d 747 (9th Cir. 2018) ...................................................................................8

*Slavkov v. Fast Water Heater Partners I, LP*,
   No.14 Civ. 04324-JST, 2017 U.S. Dist. LEXIS 116303 (N.D. Cal. July 25, 2017)...............16

*Thio v. Genji, LLC*,
   14 F. Supp. 3d 1324 (N.D. Cal. 2014) .......................................................................16

*Tierno v. Rite Aid Corp.*,
   No. 05 Civ. 02520, 2006 U.S. Dist. LEXIS 71794 (N.D. Cal. Aug. 31, 2006).....................11

*Tijero v. Aaron Bros.*,
   301 F.R.D. 314 (N.D. Cal. 2013)...............................................................................17

*Tyson Foods, Inc. v. Bouaphakeo*,
   577 U.S. 442 (2016)...............................................................................................11

*Walsh v. CorePower Yoga LLC*,
    No. 16 Civ. 05610, 2017 U.S. Dist. LEXIS 20974 (N.D. Cal. Feb 14, 2017)...................11,13

*Walton v. AT&T Servs.*,
    No. 15 Civ. 03653, 2018 U.S. Dist. LEXIS 245928 (N.D. Cal. Feb. 14, 2018)......................7

*Whiteway v. FedEx Kinko's Off. & Print Servs., Inc.*,
    No. 05 Civ. 2320, 2006 U.S. Dist. LEXIS 69193 (N.D. Cal. Sept. 13, 2006).........................12

*Williams v. Superior Court*,
    3 Cal. 5th 531, 549 (2017) .................................................................................................1

*Zamora v. Lyft, Inc.*,
    No. 16 Civ. 02558, 2018 U.S. Dist. LEXIS 166618 (N.D. Cal. Sept. 26, 2018)...................11

**STATUTES**

29 U.S.C. § 216(b) ...............................................................................................................12

**RULES**

Fed. R. Civ. P. 23(a) .........................................................................................................9,10

Fed. R. Civ. P. 23(b) .........................................................................................................9,11

Fed. R. Civ. P. 23(c) ...........................................................................................................18

Fed. R. Civ. P. 23(e) .........................................................................................................9,18

Fed. R. Civ. P. 23(g) ...........................................................................................................12

**OTHER AUTHORITIES**

Alba Conte & Herbert B. Newberg, 4 *Newberg on Class Actions* § 11:22 (4th ed. 2002)..............9

Alba Conte & Herbert B. Newberg, 4 *Newberg on Class Actions*, § 13.15 (5th ed.)....................13

*Illustrative Forms of Class Action Notices: Overview*, Fed. Judicial Ctr.,
    https://www.fjc.gov/content/301253/illustrative-forms-class-action-notices-introduction
    (last visited Mar. 27, 2024) ...............................................................................................18

Manual for Complex Litigation §§ 21.632-634 (4th ed. 2004) ......................................................9

Northern District of California, *Procedural Guidance for Class Action Settlements*,
    https://cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/
    (last visited Mar. 27, 2024) .............................................................................. *passim*

REVISED MOTION FOR PRELIMINARY
APPROVAL OF SETTLEMENT

**MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION**

**I.    INTRODUCTION**

Plaintiffs Albert Paris Suazo, Alexa Suart, and Leeda Habibi ("Plaintiffs") respectfully seek preliminary approval of a $437,500 common fund settlement of this class, collective, and PAGA action on behalf of approximately 114 individuals ("Class Members" and "PAGA Members," as more fully defined below) as set forth in the parties' Stipulation of Settlement and Release ("Settlement" or "Settlement Agreement"), attached as Exhibit 1 to the Declaration of Jahan C. Sagafi in Support of Plaintiffs' Motion for Preliminary Approval ("Sagafi Decl.").  The Settlement will resolve all claims against Defendant Bluemercury, Inc. ("Defendant" or "Bluemercury") in Plaintiffs' First Amended Complaint ("FAC").  *See* ECF No. 54.  The average gross recovery of $3,838 per Class Member is a strong result supporting approval.

The proposed settlement readily satisfies Rule 23 and applicable authority.  *See Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048-50, 1060 (9th Cir. 2019) (requirements of Fed. R. Civ. P. 23); *Williams v. Superior Court*, 3 Cal. 5th 531, 549 (2017) (requirements of Cal. Lab. Code § 2699(l)(2)); Northern District of California, *Procedural Guidance for Class Action Settlements*, https://cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/ (last visited Mar. 27, 2024) ("*District Guidance*").  The proposed settlement also satisfies the Fair Labor Standards Act's collective action requirements and applicable authority.  The Parties have zealously litigated the case, with litigation over the scope of the Court's jurisdiction over Bluemercury's workers, informal discovery for mediation purposes, a June 14, 2023 mediation session with the assistance of experienced mediator Michael J. Loeb, culminating with a fully executed settlement memorandum of understanding on August 1, 2023 and a fully executed Settlement Agreement on October 14, 2023.

At the February 1, 2024 hearing on Plaintiffs' original preliminary approval motion, the Court noted aspects of the settlement that precluded approval and ordered the Parties to submit a revised settlement and supporting papers by April 1, 2024.  *See* ECF No. 65.  The Parties have since revised and executed a revised Settlement Agreement to comply with the Court's guidance, by specifically (1) adding a provision for Notice to be disseminated by email where available (in

addition to mail), (2) adding an option for Class Members to receive checks via direct deposit, (3) confirming that Class Members have 60 days to opt out or object, (4) ensuring that Plaintiffs' fee motion will be filed at least 30 days before the objection deadline (Plaintiffs propose 35 days), and (5) replacing the cy pres beneficiary with the California unclaimed property fund (as the parties were unable to agree on a cy pres beneficiary that focuses on employee rights, as explained in § III.F., p. 8 n.1).  In addition, the Parties chose to replace the settlement administrator with a competitor that offered a superior bid (now $7,000 for greater services compared to $10,347 originally).  Lastly, this renewed Motion addresses all elements of the *District Guidance*.

## II.  **BACKGROUND**

### A.  **Factual Background**

Bluemercury is a retailer of beauty products which operates over 100 store locations nationwide, including 28 in California.  Each store is staffed with an hourly Store Manager ("SM"), as well as aestheticians and salespeople.  SMs report directly to District Managers ("DMs"), who supervise multiple store locations.  Plaintiff Suazo was employed by Defendant as an SM from approximately May 2019 to November 2019, and again from August 2020 to December 2020, in San Francisco, California.  Plaintiff Suart was employed by Defendant as an SM from approximately May 2019 to August 2020 in Santa Monica, California.  Plaintiff Habibi was employed by Defendant as an SM from approximately March 2020 to July 2023 in one of Bluemercury's California locations.

Plaintiffs allege that Bluemercury failed to (a) reimburse them for out-of-pocket business expenses reasonably necessary for the performance of their jobs as SMs; (b) pay them for off-the-clock work; (c) provide legally compliant meal and rest breaks; (d) pay them proper meal and rest period premiums; and (f) pay them for their sick time pursuant to Defendant's policies and/or practices.  Plaintiffs allege that Bluemercury committed these violations as to SMs across California.

Plaintiffs' and other SMs' job duties included customer service, selling beauty products, cleaning, and stocking products in Defendant's stores.  Plaintiffs allege that Bluemercury

establishes tight labor budgets for its stores.  The budgets do not allow SMs sufficient time to perform customer service and other tasks SMs are required to complete each day.  As a result, to ensure they do not exceed Bluemercury's established labor budgets, SMs, including Plaintiffs and the Settlement Class, are forced to work off the clock before and after their shifts, and during their lunch breaks performing manual and administrative tasks, such as customer service, unpacking shipments, merchandising, preparing reports, and reading and responding to email. While Bluemercury asserts that all employees are paid for all hours worked and that it provides employees with sufficient time to take breaks, Plaintiffs allege that SMs are unable to take *bona fide*, uninterrupted meal breaks during their workday because there is insufficient time and insufficient staff to complete the duties required to efficiently run a Bluemercury store.

In addition, when SMs leave work each day, their job is not done.  SMs routinely receive phone calls, group messages, and text messages from their supervisors and store employees while they are off the clock to which they have to respond.  Plaintiffs and other SMs receive and respond to these communications on their personal mobile phones.  Despite Bluemercury acknowledging these communications as compensable work, SMs are not compensated for this time.

Bluemercury denies these allegations, and the Court has not ruled on the merits.

**B.    Procedural Background**

On October 20, 2022, Plaintiffs Albert Paris Suazo and Alexa Suart filed this action in the United States District Court, Northern District of California, San Francisco Division, on behalf of themselves and other SMs who worked in California and nationwide, except New York.  *See* ECF No. 1.  To effectuate the settlement, on July 31, 2023, Plaintiff Habibi sent a letter to California's Labor and Workforce Development Agency ("LWDA") alleging violations of California's Private Attorneys General Act ("PAGA") for the Released PAGA Claims, as defined in the Settlement Agreement.  Plaintiff Habibi later filed a consent to join form and joined the case as a PAGA Representative.  *See* ECF No. 45.  Plaintiffs then filed their First Amended Complaint ("FAC") to add Plaintiff Habibi as a named plaintiff and to add relevant claims under PAGA.  *See* ECF No. 54.  The FAC asserts class, collective, and PAGA claims for

off-the-clock work, unlawful deductions of wages for late employees, unpaid minimum wages, wage statement violations, failure to pay wages each payday, failure to pay wages due on termination, and resulting Unfair Competition Law and PAGA claims.

### C.    Negotiation and Settlement

In addition to motion practice, the parties engaged in informal discovery, including the review and exchange of policy documents, payroll data, and other relevant documents.  Sagafi Decl. ¶ 22.  On June 14, 2023, the Parties mediated this case with the assistance of experienced mediator Michael J. Loeb, which resulted in a mediator's proposal that was accepted by the Parties and resulted in the Settlement.  *Id.*  The Parties finalized and fully executed the Settlement Agreement on October 14, 2023 and have since revised and executed a revised Settlement Agreement to comply with the Court's guidance regarding Plaintiffs' motion for preliminary settlement approval.  *Id.* ¶ 24.

## III.    THE PROPOSED SETTLEMENT

The details of the Settlement are set forth in the Settlement Agreement, attached as Exhibit 1 to the Sagafi Declaration.  A summary is set forth below.

### A.    Settlement Class

Subject to Court approval, the Settlement Class comprises (a) "Participating Class Members," defined as those individuals in the Class who have not timely and properly opted out of the Class, where "Settlement Class" means those individuals employed by Defendant as an SM in California from October 20, 2018 through September 12, 2023 (the "Class Period"), and (b) the "PAGA Members," defined as individuals employed by Defendant as an SM in California from July 31, 2022 through September 12, 2023 (the "PAGA Period").  Sagafi Decl., Ex. 1, § 7. Class Members are also FLSA Collective Members for the purposes of this settlement.  The Class size is estimated to be approximately 114 individuals.  Sagafi Decl. ¶ 29.  This estimate is based on data provided by Defendant following mediation.  *Id.*

### B.    Settlement Fund

The $437,500 Gross Settlement Fund will cover: (a) the Class Fund for Settlement Payments to Participating Class Members; (b) the PAGA Fund of $6,562.50 (with 75%, or

$4,921.88, paid to the California Labor and Workforce Development Agency ("LWDA") and 25%, or $1,640.62, paid to the PAGA Group); (c) Named Plaintiff Service Awards of up to $2,500 for Plaintiffs Albert Paris Suazo, Alexa Suart, and Leeda Habibi, as awarded by the Court; (d) Class Counsel's attorneys' fees of up to 33% of the Settlement Amount ($145,833.33), as awarded by the Court; (e) litigation costs and expenses up to $6,000, as awarded by the Court; and (f) settlement administration costs expected to be $7,000. *Id.* ¶ 25.

The Settlement Allocation of the Class Fund provides:

1. <u>Class Portion</u>. Each Participating Class Member's share of the Class Fund shall be calculated as the number of workweeks the individual was employed by Bluemercury as an SM during the Class Period divided by the total aggregate workweeks worked by all Participating Class Members times the Class Fund.

2. <u>PAGA Portion</u>. Each Participating Class Member's share of the PAGA Fund shall be calculated as the number of workweeks the individual was employed by Bluemercury as an SM during the PAGA Period divided by the total aggregate workweeks worked by all Participating PAGA Members times the PAGA Fund.

Sagafi Decl., Ex. 1, § 15(c)(i)-(ii).

In exchange for the monetary consideration described above, each Participating Class Member will release Defendant of all claims arising out of the dispute that is the subject of the Action or that could have been asserted in the Action based on the allegations in the pleadings regarding events that occurred or are alleged to have occurred, including allegations pertaining to minimum wage, off-the-clock work, overtime, hours of work, wage statements, record-keeping requirements, payment of wages, or payment of final wages, and including without limitation all federal claims (including FLSA), state claims (including any claims under the California Labor Code and PAGA) ("Released Class Claims"), and local claims that were asserted or could have been asserted in this Action based on the allegations in the pleadings regarding events that occurred or are alleged to have occurred during the PAGA Period as to PAGA claims and the Class Liability Period as to Class claims ("Released PAGA Claims"). *Id.*, §§ 24-25.

The Settlement Administrator estimates that its costs will be approximately $7,000. Sagafi Decl. ¶ 36. Plaintiffs sought bids from four settlement administrators before selecting Simpluris, Inc. ("Simpluris"), an administrator with significant expertise, skill, and experience.

*Id.* ¶¶ 33-35.  The Settlement Administrator's anticipated costs amount to just 1.6% of the Gross

Settlement Amount, which is reasonable given the amount and complexity of the work to be

performed, and is in line with settlement administration fees in comparable cases.

### C.    Notice Procedure

Within 30 days of entry of the Preliminary Approval Order, Defendant shall provide the

Settlement Administrator with all available contact information for all Class Members and

PAGA Members (the "Class Data").  Sagafi Decl., Ex. 1, § 19(a).  The Notice of Settlement shall

be sent by the Settlement Administrator to the Class Members and PAGA Members, in English,

by first-class mail, within 15 days of receiving the Class Data.  *Id.*  To the extent that Defendant

identifies a Class Member or PAGA Member but cannot find a mailing address for them, or to

the extent a mailed Notice is returned, the Settlement Administrator will check the National

Change of Address List and skip-trace (only once) the returned mail using the Class Member's

and PAGA Member's, as applicable, Social Security Number and re-mail within five days of

receipt.  *Id.*  Class Members will have 60 days from the Notice mailing date to object to the

Settlement, and Class Members will have the same amount of time to opt out.  *Id.*  Consistent

with PAGA procedures, PAGA Group Members will not be able to opt out, but they will be able

to object.  *Id.* § 22.  All Settlement funds will be paid out, i.e., there is no reversion to

Defendants.  Sagafi Decl. ¶ 28.

### D.    Class Representative Service Awards to Be Requested in Fee Motion

Under the Settlement, each Plaintiff will request a Class Representative Service Award of

$2,500.  Sagafi Decl., Ex. 1, § 15(c)(vi).  Plaintiffs will present evidence and argument

supporting this award as reasonable, beneficial to the Class, and supportive of law enforcement

with the forthcoming fee motion.

Courts in this District traditionally approve service awards of this amount and more

based on several factors: (1) the actions the plaintiff has taken to protect the interests of the

class, (2) the degree to which the class has benefitted from those actions, (3) the time and effort

that representatives put into the litigation, and (4) the reasonable fears of workplace retaliation.

*See Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 334-35 (N.D. Cal. 2014) (quoting *Staton*

-6-

*v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003)); *see also Galeener v. Source Refrigeration & HVAC, Inc.*, No. 13 Civ. 04960, 2015 U.S. Dist. LEXIS 193092, at *11 (N.D. Cal. Aug. 20, 2015) (approving service awards of $27,000, $25,000, and $15,000); *Walton v. AT&T Servs.*, No. 15 Civ. 03653, 2018 U.S. Dist. LEXIS 245928, at *8 (N.D. Cal. Feb. 14, 2018) (approving $20,000 award); *Brawner v. Bank of Am. N.A.*, No. 14 Civ. 02702-LB, 2016 U.S. Dist. LEXIS 4975, at *15-16 (N.D. Cal. Jan. 14, 2016) (approving $15,000 award).

The proposed service awards here are reasonable in light of (a) the value created by Plaintiffs in initiating and prosecuting this action (factor two, above); (b) the effort and time they invested to pursue claims on behalf of all Class Members (factors one and three); and (c) the risks they incurred of adverse action from potential employers, business partners, landlords, and others by virtue of serving as the public face of adversarial litigation against his alleged employer (factor four, as well as broader considerations).

First, Plaintiffs made this Settlement possible. If they had not stepped forward, the litigation would not have occurred, and the Class Members likely would have received nothing. Second, Plaintiffs spent significant time providing information to assist Class Counsel with pre-suit investigation, providing Class Counsel with information throughout the litigation, and staying apprised of developments in the case. Sagafi Decl. ¶¶ 21, 32. Third, as the named plaintiffs, Plaintiffs' names are prominently visible in public records. For example, a Google search of "Suazo Bluemercury" yields several results on the first page describing this litigation. *Id.* ¶ 31. Finally, in contrast to other Class Members, Plaintiffs signed a general release of claims. Sagafi Decl., Ex. 1, § 26.

## E.     Attorneys' Fees and Costs to Be Requested in Fee Motion

Consistent with the Settlement Agreement, in their fee motion, Class Counsel will apply for attorneys' fees of 33 1/3% of the Gross Settlement Fund of $437,500 (i.e., $145,833.33), plus out-of-pocket costs incurred in prosecuting the action up to $6,000. *Id.* § 17. As of March 22, 2024, Class Counsel's lodestar is already over $417,000, reflecting over 680 attorney and paralegal hours, in addition to litigation costs of $6,901.77. Sagafi Decl. ¶¶ 40, 45-47; Sagafi Decl., Ex. 2, Declaration of Camar R. Jones in Support of Plaintiffs' Motion for Preliminary

Approval ("Jones Decl.") ¶ 7.  These amounts do not account for future work to be performed to (1) secure preliminary approval; (2) oversee implementation of notice and respond to Class Member inquiries during the notice period; (3) brief and argue final approval; and (4) oversee implementation of the Settlement and report to the Court regarding the final steps in the litigation, including the Post-Distribution Accounting required by the District Court's Guidance. Sagafi Decl. ¶¶ 41, 46.  Thus, the $145,833.33 requested fee reflects a "negative" lodestar multiplier of approximately 0.35x, which will further decrease during the coming months while Class Counsel continues to work for Covered Workers' benefit.  *See Johnson v. Triple Leaf Tea Inc.*, No. 14 Civ. 1570, 2015 U.S. Dist. LEXIS 170800, at \*24 (N.D. Cal. Nov. 16, 2015) (accounting for "future attorney time" in decision whether attorneys' fees were reasonable).

### F.    Handling of Unclaimed Funds

The Settlement provides that any unclaimed funds from settlement checks that are not cashed after a reasonable time (despite Class Counsel's and the Settlement Administrator's best efforts to reach class members and provide replacement checks where necessary) shall be provided to the California State Controller's Office ("SCO"), Unclaimed Property Division, P.O. Box 942850, Sacramento, CA 94250.[1]  Sagafi Decl., Ex. 1, § 21.

### G.    Appointment of Class Representative and Class Counsel

Plaintiffs propose that they be appointed Class Representatives and that their counsel – Jahan C. Sagafi, Sabine Jean, and Jarron D. McAllister of Outten & Golden LLP, and Gregg I. Shavitz and Camar R. Jones of the Shavitz Law Group, P.A. – be appointed Class Counsel.

---

[1]    Bluemercury insisted that the residue be sent to the state unclaimed property fund instead of a *cy pres* beneficiary.  Should the Court disprove of the uncashed checks going to the SCO, Plaintiffs had proposed two *cy pres* beneficiaries: East Bay Community Law Center ("EBCLC") and Neighborhood Legal Services of Los Angeles ("NLSLA").  EBCLC and NLSLA provide legal services, including in the areas of economic justice and employment, to underserved populations in the communicates where Settlement work or worked (the San Francisco Bay area and the Los Angeles area, respectively).  *See Romero v. Perryman (In re Easysaver Rewards Litig.)*, 906 F.3d 747, 760-61 (9th Cir. 2018) (*cy pres* distribution is appropriate to distribute unclaimed funds).

IV.   **ARGUMENT**

Settlement approval "involves a two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted." *Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004); *see also* Manual for Complex Litigation §§ 21.632-634 (4th ed. 2004).  Preliminary approval requires two elements: <u>first</u>, the court must determine that the settlement class meets the requirements for class certification if it has not yet been certified, *see* Fed. R. Civ. P. 23(a), (b); and <u>second</u>, the court must determine that the settlement is fair, reasonable, and adequate, *see* Fed. R. Civ. P. 23(e)(2).  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025-26 (9th Cir. 1998).

A.   **Certification of the Rule 23 Class Is Proper.**

For settlement purposes only, the parties agree to certification of the Class.  "The validity of use of a temporary settlement class is not usually questioned."  Alba Conte & Herbert B. Newberg, 4 Newberg on Class Actions § 11:22 (4th ed. 2002).  The proposed Class is coextensive with the Class proposed in the operative First Amended Complaint, which included an additional cause of action for penalties under PAGA, filed in furtherance of the Settlement Agreement.  Sagafi Decl. ¶ 20; *District Guidance* § 1(a).  The relevant factors also weigh in favor of conditional certification for purposes of settlement.

1.   **Rule 23(a) Is Satisfied.**

<u>First</u>, numerosity is met because joinder of Class Members would be impractical.  *See* Fed. R. Civ. P. 23(a)(1).  Defendant estimates that there are 114 SMs in the Settlement Class. Sagafi Decl. ¶ 29.

<u>Second</u>, commonality is met because "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  The Ninth Circuit "construe[s]" this requirement "permissively."  *Hanlon*, 150 F.3d at 1019.  Even though proposed Class Members "may possess different avenues of redress," so long as "their claims stem from the same source," there is sufficient commonality "to satisfy the minimal requirements of Rule 23(a)(2)."  *Id*. at 1019-

20.  Here, questions of law and fact common to Plaintiffs and the Class Members predominate over any questions affecting only individual Class Members.  *See* FAC ¶ 70(b)(i)-(xvii).

Third, typicality is satisfied.  Rule 23 typicality requires a finding that the "claims or defenses of the representative parties [be] typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  Under the rule's "permissive" standard, "representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical."  *Johnson*, 2015 U.S. Dist. LEXIS 170800, at *7 (quoting *Hanlon*, 150 F.3d at 1020).  Here, Class Representatives Suazo and Suart are typical of the Class they propose to represent because they assert that they were subject to the same policies and practices of Defendant regarding compensation for all hours worked, and other wage-related claims.

Fourth, Plaintiffs Suazo and Suart have fairly and adequately protected the interests of the class.  *See* Fed. R. Civ. P. 23(a)(4).  The adequacy requirement is met where class representatives (1) have common, and not antagonistic, interests with unnamed class members; and (2) will vigorously prosecute the interests of the class through qualified counsel.  *See Hanlon*, 150 F.3d at 1020; *cf. Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625-27 (1997) (adequacy not satisfied where named plaintiffs' interests were in conflict with absent class members').  Here, Plaintiffs Suart and Suazo share a common interest with the Class Members they seek to represent, in that they all allege that they suffered the same type of injury, and they share an interest in vigorous prosecution.  Plaintiffs Suart and Suazo have vigorously represented the interests of their fellow Class Members and devoted substantial time to the prosecution of this action, including by providing extensive information to counsel, making themselves available in advance of and during mediation, being prepared to sit for deposition, and having numerous phone calls with counsel.  Sagafi Decl. ¶ 32.

In addition, Plaintiffs are represented by adequate counsel.  Outten & Golden LLP and the Shavitz Law Group, P.A. have extensive experience litigating complex civil rights and employment class actions and have vigorously prosecuted this action on behalf of Plaintiffs Suart, Suazo, and Habibi and Class Members through extensive motion practice and fact discovery.  *Id.* ¶¶ 6, 11-12 (collecting cases).  For example, in one case, Judge Chhabria found

-10-

that Outten & Golden "ha[d] capably and effectively represented the Settlement Class Members' interests," and praised them for "their outstanding work on this case." *Zamora v. Lyft, Inc.*, No. 16 Civ. 02558, 2018 U.S. Dist. LEXIS 166618, at *10, (N.D. Cal. Sept. 26, 2018); *see also, e.g.*, *Walsh v. CorePower Yoga LLC*, No. 16 Civ. 05610, 2017 U.S. Dist. LEXIS 20974, at *24-25 (N.D. Cal. Feb 14, 2017) ("[Outten & Golden] ha[s] a proven track record in the prosecution of class actions as they have successfully litigated and tried many major class action cases."). For these reasons, Class Counsel satisfy the adequacy requirement of Rule 23(a)(4).

### 2.    Certification Is Proper Under Rule 23(b)(3).

Rule 23(b)(3) requires that common questions predominate over individual ones, and that a class action is superior to other available methods for adjudicating the controversy. *See* Fed. R. Civ. P. 23(b)(3). Both requirements are met here.

The proposed Class is sufficiently cohesive to satisfy predominance. *See Amchem*, 521 U.S. at 623 (Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."). Predominance does not require "that each element of [a plaintiff's] claim [is] susceptible to classwide proof." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 469 (2013) (internal quotation marks and citation omitted). Rather, "[t]he predominance inquiry 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quotations omitted). Here, Plaintiffs challenge Defendant's alleged common policies and practices, such as not reimbursing Class Members for business expenses reasonably necessary for them to perform their jobs as SMs and not failing to pay them for all hours worked. These and other facts, and the legal questions they raise, predominate over any individual issues. Superiority rests on factors like individual Class Members' desire to bring individual actions and the utility of concentrating the litigation in one forum. *See* Fed. R. Civ. P. 23(b)(3). Here, "there is no indication[] that class members seek to individually control their cases, that individual litigation is already pending in other forums, or that this particular forum is undesirable for any reason." *Tierno v. Rite Aid Corp.*, No. 05 Civ. 02520, 2006 U.S. Dist. LEXIS 71794, at *33 (N.D. Cal. Aug. 31, 2006); *see*

*also Amchem*, 521 U.S. at 615 (internal citation omitted). Individual lawsuits from more than one hundred plaintiffs, for modest damages, would be wasteful and inefficient for the court system. *See, e.g.*, *Whiteway v. FedEx Kinko's Off. & Print Servs., Inc.*, No. 05 Civ. 2320, 2006 U.S. Dist. LEXIS 69193, at *30 (N.D. Cal. Sept. 13, 2006). Because the class mechanism will achieve economies of scale for Class Members, conserve judicial resources, and preserve public confidence in the system by avoiding repetitive proceedings and preventing inconsistent adjudications, superiority is met.

### 3. Plaintiffs' Counsel Should Be Appointed as Class Counsel.

Adequacy of class counsel depends on (1) work performed on the matter, (2) experience, (3) knowledge of the law, and (4) the resources that class counsel can commit. *See* Fed. R. Civ. P. 23(g)(1)(A). Class Counsel readily satisfy these criteria, as set forth above. *See supra* § IV(A)(1); *see also* Sagafi Decl. ¶¶ 6, 11-12; Jones Decl. ¶¶ 2-4.

### B. Collective Certification of the Putative Collective is Appropriate.

Employees alleging violation of their rights under the FLSA may bring a claim seeking relief on their own behalf and behalf of "other employees similarly situated." 29 U.S.C. § 216(b). At the conditional certification stage, courts determine whether the proposed collective should be given notice. *See Campbell v. City of Los Angeles*, 903 F.3d 1090, 1109 (9th Cir. 2018). This stage is lenient, loosely akin to a plausibility standard. *See Hernandez v. Dutton Ranch Corp.*, No. 19 Civ. 817, 2020 U.S. Dist. LEXIS 47106, at *3 (N.D. Cal. Mar. 17, 2010) (citation omitted). Plaintiffs are similarly situated when they share "a similar issue of law or fact material to the disposition of their FLSA claims." *Campbell*, 903 F.3d at 1117.

Here, Plaintiffs have demonstrated that conditional certification is appropriate alleging that Bluemercury did not compensate them for work completed off the clock and for hours worked over 40 per workweek, in violation of the FLSA. *See, e.g.*, *Loera v. Cnty. of Alameda*, No. 23 Civ. 00792, 2023 U.S. Dist. LEXIS 120800, at *12 (N.D. Cal. July 13, 2023) (conditionally certifying collective of safety aides that alleged they were victims of common policy where they were not paid for work completed before and after their shifts).

C.      **The Settlement Is Fair, Reasonable, And Adequate.**

Once the Court has found class certification to be proper, the next step of the preliminary approval process is to assess whether the settlement is "fundamentally fair, adequate, and reasonable." *Hanlon*, 150 F.3d at 1026.  Typically, the first-stage analysis looks for "obvious deficiencies," with preliminary approval being granted if the settlement is non-collusive and within the range of possible final approval.  *Walsh*, 2017 U.S. Dist. LEXIS 20974, at *19 (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)).[2]

When considering whether to grant approval, courts often "put a good deal of stock in the product of an arm['']s-length, non-collusive, negotiated resolution." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (internal citations omitted).  Courts may also assess the following factors, which are assessed in greater detail at final approval: (1) "the strength of the plaintiffs' case"; "the risk, expense, complexity, and likely duration of further litigation"; and "the risk of maintaining class action status throughout the trial"; (2) "the amount offered in settlement"; (3) the extent of discovery completed and the stage of the proceedings"; and (4) "the experience and views of counsel." *Hanlon*, 150 F.3d at 1026 (internal citation omitted).

1.      **Plaintiffs Face Significant Hurdles on Class Certification.**

"Approval of a class settlement is appropriate when 'there are significant barriers plaintiffs must overcome in making their case.'" *Betancourt v. Advantage Human Resourcing, Inc.*, No. 14 Civ. 01788, 2016 U.S. Dist. LEXIS 10361, at *11 (N.D. Cal. Jan. 28, 2016) (quoting *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010)).  Here, Plaintiffs face substantial obstacles to class-wide recovery.

---

[2]      *See also Cancilla v. Ecolab, Inc.*, No. 12 Civ. 3001, 2015 U.S. Dist. LEXIS 106249, at *9 (N.D. Cal. Aug. 12, 2015) (focusing preliminary approval analysis on "noncollusive negotiations," the lack of "obvious deficiencies" or "preferential treatment," and being "with[in] the range of possible approval") (internal citations omitted); Alba Conte & Herbert B. Newberg, 4 *Newberg on Class Actions*, § 13.15 (5th ed.).

First, liability is far from guaranteed, because even if Plaintiffs could prove that Bluemercury failed to properly pay SMs for off-the-clock work and expense reimbursements, Bluemercury may be able to point to differences among the SMs across each location to explain away any discrepancies.  Bluemercury could also attempt to show that Plaintiffs' experiences were individualized and localized rather than part of a statewide pattern or practice.

Second, Plaintiffs may face obstacles in winning class certification because of the multiple locations across California and different DMs responsible for each location.  While wage and hour class actions are often certifiable, the details of each person's circumstances may require individualized inquires, including as to damages.  *See, e.g.*, *Berndt v. California Dep't of Corr.*, No. 03 Civ. 3174-PJH, 2012 U.S. Dist. LEXIS 37755, at *40 (N.D. Cal. Mar. 20, 2012) (noting that "the potential for multiple mini-trials, even solely as to damages, further weakens the case for a finding of superiority in this instance.").

### 2.    The Settlement Amount Is Appropriate.

"[P]erhaps the most important factor" courts consider in determining whether to grant preliminary approval is "plaintiffs' expected recovery balanced against the value of the settlement offer." *Cotter v. Lyft, Inc.*, 176 F. Supp. 3d 930, 935 (N.D. Cal. 2016) (quotation omitted).  Here, the monetary relief provides strong value to the Class Members.

Based on Plaintiffs' estimated hours of overtime worked and on payroll data produced by Bluemercury before mediation, covering approximately 114 SMs, the maximum exposure for Class Members is approximately $4,330,000, using an estimated 5 overtime hours worked per week during 90% of workweeks at issue.  Sagafi Decl. ¶ 29.  This figure includes all potential non-PAGA damages and penalties (for unpaid wages, wage statement penalties, waiting time penalties, and interest) as well as all potential PAGA penalties (for post-separation waiting time (Cal. Labor Code § 203), pre-separation waiting time (Cal. Labor Code § 204), wage statement violations (Cal. Labor Code § 226), record-keeping violations (Cal. Labor Code § 1174.5), and minimum wage violations (Cal. Labor Code § 1197)).  *Id.*

This discounted maximum exposure takes account of the above estimates, and the likelihood that, if these claims were litigated, Plaintiffs would have faced significant challenges

-14-

to recovering these amounts.  <u>First</u>, Bluemercury would have argued that off-the-clock time was not actually worked, but if it was worked, that work was done in contravention of company policy.  <u>Second</u>, Bluemercury would have argued that all overtime was paid for all hours recorded.  <u>Third</u>, Bluemercury would have argued that many penalties were duplicative or inappropriately derivative and could not be awarded.  <u>Fourth</u>, Bluemercury would have argued that the Court should award the initial violation amount for each PAGA violation, as opposed to the higher continuing violation amount.  <u>Fifth</u>, Bluemercury would have argued that Plaintiffs would not have been able to certify the class claims.  <u>Sixth</u>, Bluemercury would have argued that the Court should not authorize notice to the collective because it believes Plaintiffs are not similarly situated to other SMs, as required by the FLSA.  <u>Seventh</u>, Bluemercury would have argued that the existence of arbitration agreements would reduce the size of the Settlement Class.  Furthermore, on the merits, Plaintiffs may not have surmounted summary judgment, trial, and appellate challenges to any trial victory.

While Class Counsel have litigated many wage and hour and discrimination class actions, there are few truly comparable cases alleging off-the-clock and reimbursement claims under California and federal law.  *See District Guidance* § 11.  Below are two comparators:

| Case Name | *Armstrong v. Concentrix Corp.*, No. 16 Civ. 05363 (N.D. Cal.) | *Lillehagen et al. v. Alorica, Inc.*, No. 8:13 Civ. 92 (N.D. Cal.) |
|---|---|---|
| **Released Claims** | Unpaid overtime under FLSA; California breach of contract claims | Unpaid overtime and off-the-clock claims under FLSA and various state laws, including California wage and hour and PAGA claims |
| **Methods of Notice** | U.S. First Class Mail | U.S. First Class Mail |
| **Total Settlement Fund** | $320,000 | $9,250,000 |
| **Class Size** | 729 opt-ins | Approximately 120,000 class members |
| **Average Recovery** | $439 | $77 |
| **Attys' Fees and Costs** | Fees of $126,605 and costs of $29,000 | Fees of $3,083,333.33 and costs of $390,000 |
| **Administrative Costs** | $22,700 | $250,000 |
| **Estimated Exposure** | $216,579[3] | $82,400,000 |

---

[3]    *See Armstrong v. Concentrix Corp.*, No. 16 Civ. 05363, Mot. for Prelim. Approval at 13, ECF No. 114.

The average gross recovery here of **$3,838 per Class Member** compares favorably to other cases and is a strong result supporting approval. While it is always true that a larger settlement amount was theoretically possible, "the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (citations and internal quotation marks omitted). Given the estimated total exposure and the risks that Plaintiffs would face in attempting to win on all arguments, the $437,500 Settlement amount is a strong recovery.

### a)      The PAGA Allocation Is Reasonable.

Finally, the PAGA allocation of $6,562.50 represents 1.5% of the total $437,500 Settlement amount. This comports with applicable precedent. *See, e.g.*, *DiMercurio v. Equilon Enters. LLC*, No. 19 Civ. 04029-JSC, 2022 U.S. Dist. LEXIS 225426, at \*14 (N.D. Cal. Dec. 14, 2022) (approving PAGA allocation of about 1.6% of overall recovery); *Slavkov v. Fast Water Heater Partners I, LP*, No.14 Civ. 04324-JST, 2017 U.S. Dist. LEXIS 116303, at \*2 (N.D. Cal. July 25, 2017) (2.2%); *Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030, 1037 (N.D. Cal. 2016) (3.7%); *Thio v. Genji, LLC*, 14 F. Supp. 3d 1324, 1329-30 (N.D. Cal. 2014) (1%).

Given these considerations, Plaintiffs submit that the $437,500 settlement amount, including the $6,562.50 PAGA amount, is fair, reasonable, and adequate, and that the Settlement is in the best interest of the SMs.

### 3.      The Extent of Discovery Supports Settlement.

A settlement requires adequate discovery. The touchstone of the analysis is whether "the parties have sufficient information to make an informed decision about settlement," including formal and informal discovery. *Dunleavy v. Nadler* (*In re Mego Fin. Corp. Sec. Litig.*), 213 F.3d 454, 459 (9th Cir. 2000) (quoting *Linney*, 151 F.3d at 1239). Here, Plaintiffs investigated these claims carefully and then zealously litigated them, efficiently moving into settlement discussions, supported by informal discovery, to reach a reasonable settlement. Specifically, Defendant produced relevant policies and procedures and representative payroll data regarding SMs. Sagafi Decl. ¶ 22. Thus, the Settlement results from Class Counsel's informed judgment about the strengths and weaknesses of the claims.

-16-

### 4. Counsel's Experience and Views Support Approval.

"'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." *DirecTV, Inc.*, 221 F.R.D. at 528. "[P]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez*, 563 F.3d at 967. Class Counsel are some of the most experienced class action litigators in the country. Sagafi Decl. ¶ 6; Jones Decl. ¶ 4. Class Counsel specialize in prosecuting complex employment class actions, and over many years have successfully – and unsuccessfully – litigated many such cases, putting them in a strong position to weigh the strengths and weaknesses of Plaintiffs' claims and Bluemercury's defenses. Sagafi Decl. ¶ 6; Jones Decl. ¶ 4. Based on their extensive experience, Class Counsel believe that the settlement is fair, reasonable, and adequate.

### 5. The Parties Participated in Arm's-Length Negotiations Before Mediator Michael J. Loeb.

When parties reach a settlement in private mediation, that "support[s] the conclusion that the settlement process was not collusive." *Tijero v. Aaron Bros.*, 301 F.R.D. 314, 324 (N.D. Cal. 2013). Here, the settlement easily meets the rigorous scrutiny required in this District for both substantive and procedural reasons. First, the settlement is substantively strong, providing meaningful monetary relief that Class Members likely would not have received otherwise. Second, the settlement is procedurally sound, (a) having been reached after hard-fought adversarial litigation, with informal mediation discovery and motion practice; (b) with no parallel litigation that could give rise to reverse auction concerns; and (c) after a mediation session with experienced class action mediator Michael J. Loeb. Sagafi Decl. ¶ 22.

### D. The Court Should Approve the Proposed Settlement Administrator.

The parties have agreed on Simpluris, a well-regarded settlement administrator, to be the Settlement Administrator after soliciting bids from four experienced and reputable administrators. *Id.* ¶ 33. The method of notice set forth in the Settlement Agreement was discussed in detail with the Court, which framed the discussion of notice with the settlement administrators. Over the last two years, Simpluris has administered the settlement in *California*

1    *Civil Rights Dep't v. Activision Blizzard et al.* for Class Counsel.  Sagafi Decl., Ex. 3 (E.

2    Springer Simpluris Decl. ("Simpluris Decl.")) ¶ 6; *District Guidance* § 2.

3        With this Motion, Plaintiffs provide a declaration and supporting exhibits from Simpluris

4    regarding its procedures for handling class member data.  Sagafi Decl., Ex. 3 (Simpluris Decl.);

5    *see also* Sagafi Decl., Exs. A-C to Simpluris Decl.  Simpluris has confirmed that it takes

6    responsibility for potential errors and confirms it maintains insurance for such instances.  Sagafi

7    Decl., Ex. 3 (Simpluris Decl.) ¶ 7.  Simpluris's anticipated costs of approximately $7,000 are

8    modest both in absolute terms and relative to the value of the Settlement.  Bluemercury will pay

9    the settlement administration costs, which will be deducted from the Settlement Fund.  Sagafi

10   Decl., Ex. 1, § 15(c).

11       **E.    The Court Should Approve the Proposed Notice and Notice Administration**
12             **Plan.**

13       The proposed Notice is the "best notice . . . practicable under the circumstances," Fed. R.

14   Civ. P. 23(c)(2)(B), and is "reasonable."  Fed. R. Civ. P. 23(e)(1).  The proposed Notice is

15   consistent with the *District Guidance* and modern best practices set forth by the Federal Judicial

16   Center.[4]  Sagafi Decl., Ex. 1, Ex. A (Notice).  "The notice must clearly and concisely state in

17   plain, easily understood language: (i) the nature of the action; (ii) the definition of the class

18   certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an

19   appearance through an attorney if the member so desires; (v) that the court will exclude from the

20   from the class any member who requests exclusion; (vi) the time and manner for requesting

21   exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)."

22   Fed. R. Civ. P. 23(c)(2)(B).  Notice is satisfactory if it "generally describes the settlement in

23   sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be

24   heard."  *Churchill Vill., LLC v. GE*, 361 F.3d 566, 575 (9th Cir. 2004).  The Parties' proposed

25   Notice includes all required information.  Sagafi Decl., Ex. 1, Ex. A (Notice).

26

27   _____

28   [4]    *See Illustrative Forms of Class Action Notices: Overview*, Fed. Judicial Ctr.,
     https://www.fjc.gov/content/301253/illustrative-forms-class-action-notices-introduction (last
     visited Mar. 27, 2024).

-18-

The proposed Notice provides information regarding the final approval hearing, how PAGA Members can obtain additional information, and how Class Members can obtain additional information, object, or opt out within 60 days of the notice mailing. Sagafi Decl., Ex. 1, Ex. A (Notice). The proposed Notice explains that Class Members who do not timely opt out will be Class Members for settlement purposes, and will release the claims asserted in the lawsuit, as well as any claims that could have been asserted based upon the facts alleged in the complaint. Sagafi Decl., Ex. 1, Ex. A (Notice). The scope of the release is the same as the claims in the FAC. *See District Guidance* § 1(b). The proposed Notice states that Class Members who affirmatively opt out will not receive a settlement payment, but also will not be subject to any release of claims. Sagafi Decl., Ex. 1, Ex. A (Notice). The proposed Notice provides instructions for accessing case documents on the docket and contains contact information for Class Counsel, facilitating Class Members' abilities to ask questions and learn information. *See District Guidance* § 3. The proposed Notice will also list the date of the final approval hearing, and that it may be subject to change without further notice. *See id*.

The Parties have agreed, subject to Court approval, to have the Settlement Administrator mail the proposed Notice via email and First Class U.S. Mail, postage prepaid, to the last-known address of the Class Members as updated through the United States Postal Service's National Change of Address database. Sagafi Decl. Ex. 1, § 19(a). This method meets the requirements of due process. *See Overton v. Hat World, Inc.*, No. 11 Civ. 01645, 2012 U.S. Dist. LEXIS 144116, at *5 (E.D. Cal. Oct. 4, 2012) (noting that individual notice to class members' last known address meets the requirements of due process). Returned mail without forwarding addresses will be skip traced once to get an updated address and then re-mailed. Sagafi Decl. Ex. 1, § 19(b). Additionally, PAGA Members will be sent a letter that describes the settlement and that they will be receiving a payment, which includes Class Counsel's contact information in case employees have any questions.

Accordingly, the proposed notice plan complies with Rule 23 and due process. *Id*., § 19(a).

## V.   A FINAL APPROVAL HEARING SHOULD BE SCHEDULED.

Plaintiff, after consultation with Defendants, proposes that the Court adopt the following schedule for effectuating the various steps in the settlement approval process described above.[5]

| Event | Proposed Date[6] |
|---|---|
| Preliminary Approval Hearing | May 2, 2024 |
| Entry of Preliminary Approval Order (assumed for purposes of calculating subsequent dates) | April 11, 2024 |
| Defendants to provide class list data to Administrator | June 13, 2024 |
| Notice disseminated by Settlement Administrator | June 28, 2024 |
| Motion for attorneys' fees, costs, and service awards | July 23, 2024 |
| Deadline for exclusions and objections | August 27, 2024 |
| Final Approval Motion | September 5, 2024 |
| Final Approval Hearing | October 10, 2024 |

## VI.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court: (1) conditionally certify the Settlement Class; (2) preliminarily approve the Settlement pursuant to Fed. R. Civ. P. 23 and Section 216(b) of the FLSA; (3) appoint Plaintiffs as the Class Representatives, their counsel as Class Counsel, and Simpluris as Settlement Administrator; (4) set appropriate deadlines; (5) approve the proposed class notice and forms; and (6) schedule a final approval hearing.

---

[5]    These are placeholder dates assuming preliminary approval is granted on May 2, 2024. Plaintiffs will supply the Court with an updated calendar if preliminary approval is granted on a different date.

[6]    Plaintiffs will recalculate these dates after the Court grants preliminary approval.

1

2                                          Respectfully submitted,

3    Dated: March 28, 2024          By:    /s/ Jahan C. Sagafi
                                           Jahan C. Sagafi (SBN 224887)
4                                          **OUTTEN & GOLDEN LLP**
                                           One California Street, 12th Floor
5                                          San Francisco, CA 94111
                                           Tel.:    (415) 638-8800
6                                          Fax:     (415) 638-8810
7                                          Email:   jsagafi@outtengolden.com

8
                                           Sabine Jean*
9                                          Jarron McAllister*
                                           **OUTTEN & GOLDEN LLP**
10                                         685 Third Avenue, 25th Floor
11                                         New York, NY 10017
                                           Tel.:    (212) 245-1000
12                                         Fax:     (646) 509-2060
                                           Email:   sjean@outtengolden.com
13                                         Email:   jmcallister@outtengolden.com
14
                                           Gregg I Shavitz**
15                                         Camar R Jones*
                                           **SHAVITZ LAW GROUP, P.A.**
16                                         951 Yamato Rd., Suite 285
17                                         Boca Raton, FL 33431
                                           Tel.:    (800) 616-4000
18                                         Fax:     (561) 447-8831
19                                         Email:   gshavitz@shavitzlaw.com
                                           Email:   cjones@shavitzlaw.com
20
21                                         *Attorneys for Plaintiffs and Proposed
                                           Class, Collective, and PAGA Action
22                                         Members*

23                                         *Admitted pro hac vice
24                                         **Pro hac vice motions forthcoming*

25

26

27

28